J-A16025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| VASYL S. KOVALCHUK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YELENA V. KOVALCHUK | : | |
| | : | |
| Appellant | : | No. 359 MDA 2023 |

Appeal from the Order Entered February 7, 2023
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2016-03340

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:           **FILED: OCTOBER 3, 2023**

*Pro se* Appellant, Yelena V. Kovalchuk ("Mother"), purports to appeal from the trial court's February 6, 2023 order finding that Mother is in contempt of court and directing her to report for sentencing.[1]  After careful review, we affirm.

The trial court summarized the factual and procedural history of this case as follows:

> This appeal arises from a hearing on [Appellee's, Vasyl S. Kovalchuk ("Father"),] Petition for Contempt, after which this [c]ourt entered an Order finding Mother … in Contempt of the Custody Order dated September 30, 2022.  Thereafter, Mother was sentenced to 6 months['] incarceration with a condition of purge that she return the minor children to Father's custody.

---

[1] This order was entered on February 6, 2023, but dated February 3, 2023. However, as discussed *infra*, Mother should have appealed from the trial court's later February 7, 2023 order imposing sanctions.

This matter has a long and arduous procedural history.[1]   Most recently, the parties were before the Honorable Carrie E. Hyams for a full custody trial.  After trial, Judge Hyams entered an Order [on September 30, 2022,] granting Father sole legal and physical custody of the parties' minor children, M.K. (YOB 2006) and J.K. (YOB 2008) (collectively, "the children"), and restricting Mother to periods of supervised physical custody only.  Mother appealed said Order, but her request for supersedeas was denied.  Ultimately, the September 30, 2022 [Order] was affirmed by the Superior Court.  [*See Kovalchuk v. Kovalchuk*, 296 A.3d 587 (Pa. Super. 2023) (unpublished memorandum).]

> [1] Including this appeal, Mother has appealed Orders in this matter eight times.  *See* Superior Court docket numbers 1687 MDA 2017; 695 MDA 2018; 1086 MDA 2019; 1470 MDA 2019; 448 MDA 2021; 537 MDA 2022; and 1420 MDA 2022.

Mother failed to return the children to Father's custody, and Father filed a Petition for Contempt of the September 30, 2022 Custody Order and a Petition for Special Relief seeking the return of the children and coercive incarceration of Mother.[2]   Judge Hyams recused from the matter, and this [c]ourt was assigned to hear the Petitions.  On January 4, 2023, this [t]rial [c]ourt held a status conference to inform Mother that Father was seeking coercive incarceration and inform her that she would be entitled to the services of the Public Defender.   A hearing on the Petitions commenced on February 3, 2023.

At the hearing, Father introduced evidence that Mother had, after the issuance of the September 30, 2022 Custody Order, removed

---

[2] In Father's Petition for Special Relief, Father alleged, *inter alia*, that on October 6, 2022, the parties' daughter was scheduled to leave school early for an orthodontist appointment.  Father's Petition for Special Relief, 10/14/22, at ¶ 5.  Father averred that he arrived to pick the child up and was informed that she had already departed the school.  *Id.* at ¶ 6.  He said he was presented with an early dismissal note, indicating that the child had been picked up by Mother.  *Id.* at ¶ 7.  Despite attending the child's orthodontist appointment, Father claimed that Mother chose to take the child home with her, even though the September 30, 2022 order requires Mother's custody to be supervised.  *Id.* at ¶ 8.  Father stated that he believes that the children have been in Mother's custody since the issuance of the September 30, 2022 order.  *Id.* at ¶ 9.

J.K. from school on October 6, 2022[,] to take her to the orthodontist, cancelled several counseling and medical appointments for the children, and made other medical appointments for the children all while having no legal custody. Father also offered that the children remain in Mother's custody against the September 30, 2022 Order and that[,] while in Mother's custody, the children have been missing school.

Mother offered her explanations as to Father's allegations. Mother denied that she was in violation of the [O]rder because the children were not residing with her, but rather, Mother's sister was residing at Mother's house with the children, and Mother was residing at her sister's house with her sister's children. Mother also denied that the Order precluded her from signing forms to remove the children from school, to which the [c]ourt informed her that because she does not have legal custody, she could not remove the children from school.

Mother's main defense, however, was that she could not get the children to obey the Order because they are "strong in their belief" that they do not want to see Father because he is "abusive." Mother testified that she believes that she is not violating the Custody Order because the children are refusing to abide by it, and she "should not be liable for something that the children refuse to do."

Mother also asked this [t]rial [c]ourt to consider two affidavits of the children that she had filed of record. These affidavits state that the children do not want to live with Father and believe that Judge Hyams' assessment of the custody situation was wrong. They also disparaged Judge Hyams; the [g]uardian *ad litem*, Hannah Herman-Snyder, Esquire (hereinafter "GAL"); and Jamie Orris, the children's reunification counselor. They asked this [t]rial [c]ourt not to incarcerate Mother because they need her, and Father is engaged in a "smear campaign" against her. When questioned about the authenticity of the affidavits, Mother told … this [t]rial [c]ourt that it could verify the information with the children themselves.

Ultimately, this [t]rial [c]ourt did not find Mother's testimony to be credible and found her in violation of the September 30, 2022 Custody Order. Father requested coercive incarceration, arguing that all other methods of sanctioning Mother had not worked. Mother first asked this [t]rial [c]ourt to delay sentencing because the September 30, 2022 Order was on appeal. After being

- 3 -

informed, again, that her supersedeas had been denied, Mother urged this [t]rial [c]ourt to adopt the sanction listed in the September 30, 2022 [Order], namely, that Mother would be fined $20 per day for each day that the children were not returned.

This [t]rial [c]ourt set sentencing for February 7, 2023, giving Mother four days to comply with the Custody Order and return the children to Father. This [t]rial [c]ourt informed Mother that if she were to return the children to Father, she would have satisfied any purge condition of incarceration, but if she did not, she should be prepared to stand committed. Mother appeared for sentencing and informed this [t]rial [c]ourt that she did not return the children, and Mother was then sentenced to six months incarceration, with a condition of purge that the children be returned to Father's custody.[28]

> [28] … Mother was subsequently released from incarceration after Mother's parents returned the children to Father.

Trial Court Opinion ("TCO"), 3/21/23, at 1-4 (most footnotes and internal citations omitted).

On February 22, 2023, Mother filed a notice of appeal, purporting to appeal from the trial court's February 6, 2023 order, which found Mother in contempt and instructed her to report for sentencing on February 7, 2023.[3, 4] However, "[u]nless sanctions are imposed, an order declaring a party in contempt is interlocutory. … A threat to hold a party in contempt at some future time if a decree is not performed or a threat to impose sanctions in the future is neither final nor appealable." *Genovese v. Genovese*, 550 A.2d 1021, 1022-23 (Pa. Super. 1988) (citations omitted). Thus, the trial court's February 6, 2023 order is interlocutory, as it did not impose sanctions.

---

[3] Again, this order was dated February 3, 2023, but entered on February 6, 2023.

[4] Mother attached a concise statement to her notice of appeal.

Instead of appealing from the February 6, 2023 order, Mother should have appealed from the trial court's February 7, 2023 sentencing order, which — due to the finding of contempt — mandated that she pay a fine of $500.00 and undergo imprisonment for six months, with the condition that she will be released when the children are returned to Father's custody and control. Nevertheless, despite Mother's appealing from the incorrect order, we decline to quash her appeal, as the trial court subsequently imposed sanctions in its February 7, 2023 order and Mother filed her notice of appeal on February 22, 2023, after both orders were entered. *See Commonwealth v. Jones*, 2020 WL 686215, at *2 n.2 (Pa. Super. filed Feb. 11, 2020) (observing that "this Court regularly amends captions to reflect the properly-appealed-from orders when parties designate incorrect orders in their notices of appeal") (citations omitted); *see also* Pa.R.A.P. 126(b) (providing that unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value). As such, we have amended the caption accordingly and proceed to the merits of Mother's appeal.

On appeal, Mother raises a single issue for our review:

The question presented is whether the Court of Common Pleas abused its discretion in imprisoning … [M]other by ignoring a specific provision contained in the Order that limited the opponent's remedy to twenty dollars per day of noncompliance.

Mother's Brief at 5-6.[5]

"In reviewing a trial court's finding on a contempt petition, we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial court when reviewing an order of contempt." ***Rogowski v. Kirven***, 291

---

[5] Even though the children have been returned to Father and Mother has been released from jail, Mother's appeal is not moot. ***See*** TCO at 4 n.28. This Court has explained:

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.

> This Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

***Orfield v. Weindel***, 52 A.3d 275, 277-78 (Pa. Super. 2012) (citations omitted). Here, Mother's non-compliance with the September 30, 2022 custody order could again subject her to civil contempt proceedings, including the possibility of coercing her compliance by imprisoning her. ***See id.*** at 278 (determining appeal from contempt order is not moot where, although the appellant had been released from jail, he had not paid off his arrears and was still subject to the trial court's order to make monthly payments). Therefore, because the question presented is capable of repetition and apt to elude appellate review, we will not deem Mother's appeal moot.

A.3d 50, 57 (Pa. Super. 2023) (citation, quotation marks, and brackets omitted). Further,

> [t]o be in contempt, a party must have violated a court order, and the complaining party must satisfy that burden by a preponderance of the evidence. Specifically, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he, or she, is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***Id.*** (cleaned up).

In her appellate brief, Mother argues that "[a] sanction of $20/day cannot become a sanction of incarceration." Mother's Brief at 9. In making this argument, she points to the September 30, 2022 custody order. That order stated, in relevant part, the following:

> **1. Legal Custody**: [Father] shall have sole legal custody of the Minor Children, M.[]K. and J.[]K. Father shall make all major non-emergency decisions affecting the Minor Children's general well-being, including, but not limited to, all decisions regarding their health, education and religion with a view toward obtaining and following a harmonious policy in the Children's best interests. Father shall notify [Mother] of any activity or circumstance concerning the Children that could reasonably be expected to be of concern to her. Neither party shall attempt, or permit anyone else to attempt, to alienate the affections of the Children from the other parent. Pursuant to the terms of 23 Pa.C.S. § 5336, each parent shall be entitled to all records and information pertaining to the Minor Children, including, but not limited to, medical, dental, religious or school records, and the residence address of the Children. To the extent one parent has possession of any such records or information, that parent shall be required to share the same, or copies thereof[,] with the other parent within such reasonable time as to make the records and information of reasonable use to the other parent.
>
> With regard to any emergency decisions which must be made, the parent having physical custody of the Child at the time of the

- 7 -

emergency shall be permitted to make any immediate decisions necessitated thereby. However, the parent shall inform the other of the emergency and consult with her or him as soon as possible.

**2. <u>Physical Custody</u>**: The physical custody schedule will be amended as follows:

Father shall have primary physical custody of the children subject to the following provisions:

a. Mother shall have supervised visitation with the children to be fully supervised by ABC in Carlisle. Visitation shall be no less than four hours every other week unless there is a written recommendation from a therapeutic reunification counselor to increase or decrease Mother's visitation. Visitation at ABC will be at Mother's expense.

b. Mother is directed to immediately relinquish custody of the children to Father by packing up their belongings in her household needed for their day-to-day care and taking the children to the home of Father and dropping them off into Father's care and custody. ***For each full day that the children are not in Father's physical custody, Mother shall pay a fine of $20.00/day to Father.***

c. If primary physical custody is established with Father and the other provisions of this order are complied with, either party may file a motion for status conference in order to modify the physical custody schedule.

Order, 9/30/22, at 1-2 (unnumbered; some emphasis added).

Based on this order, Mother says the trial court was limited to sanctioning her $20.00/day, and could not imprison her. We disagree. Initially, Section 5323(g) of the Child Custody Act specifically permits imprisonment as a punishment for contempt:

**(g) Contempt for noncompliance with any custody order.--**

(1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:

- 8 -

(i) Imprisonment for a period of not more than six months.

(ii) A fine of not more than $500.

(iii) Probation for a period of not more than six months.

(iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).

(v) Counsel fees and costs.

(2) An order committing an individual to jail under this section shall specify the condition which, when fulfilled, will result in the release of that individual.

23 Pa.C.S. § 5323(g).[6]

Moreover, the $20.00/day fine mentioned in the order is listed in the "Physical Custody" section of the order and applies for each full day the children are not in Father's physical custody. The $20.00/day fine does not address Mother's usurpation of Father's legal custody or her seeing the children unsupervised, both of which the trial court considered when finding Mother in contempt. Indeed, Father presented evidence at the February 3, 2023 contempt hearing that Mother took J.K. out of school for an orthodontist appointment, despite not having legal custody of her and only supervised visitation. N.T., 2/3/23, at 6-7, 40, 53, 65. The trial court also deemed incredible Mother's testimony that she has seldomly seen the children since September 30, 2022, and that the children were living in Mother's house with

---

[6] As the trial court astutely observed, the $20.00/day fine set forth in the September 30, 2022 order automatically accrues for each day the children are not in Father's custody, and does not require a finding of contempt in order to be imposed. TCO at 7.

Mother's sister, while Mother lived in her sister's house with her sister's children. **See** TCO at 3. As such, the trial court's finding of contempt goes beyond the fact that Father has not had physical custody of the children. We therefore reject Mother's argument that the trial court could only fine her $20/day, and could not imprison her.[7]

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/3/2023

---

[7] We observe that, although Mother contended below that she could not get the children to obey the September 30, 2022 order, she does not advance that claim on appeal. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").